NOT DESIGNATED FOR PUBLICATION

No. 115,718

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JERRY SHINN,
*Appellant*,

v.

TONY'S DRYWALL, INC., and KANSAS BUILDINGS INSURANCE GROUP,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed July 28, 2017. Affirmed.

*Melinda G. Young*, of Bretz & Young, of Hutchinson, for appellant.

*Roy T. Artman*, of Kansas Builders Insurance Group, for appellees.

Before STANDRIDGE, P.J., LEBEN, J., and PATRICIA MACKE DICK, District Judge, assigned.

*Per Curiam*: Jerry Shinn appeals the Workers Compensation Board's (Board) decision to deny benefits for work disability and permanent total disability after he sustained two workplace accidents in July 2012 and September 2012. Shinn contends that the Board erred in: (1) finding the July accident resulted in a functional impairment to his shoulder, but not his neck, (2) holding he is not entitled to work disability benefits under K.S.A. 2016 Supp. 44-510e(a)(2)(C)(i), and (3) holding he was not entitled to permanent total disability benefits under K.S.A. 2016 Supp. 44-510c(a)(2). Finding no error, we affirm.

1

Shinn worked for Tony's Drywall as a laborer for approximately 17 to 18 years, hanging and finishing drywall. At issue in this case are injuries resulting from two workplace accidents Shinn sustained in 2012 while working for Tony's Drywall.

The first accident occurred on July 16, 2012. Shinn fell 16-20 feet off scaffolding onto the floor of a home in which he was working. Shinn reported that he landed on his left shoulder, then rolled to his right side and hit his head on the floor. Shinn drove himself to the emergency room. Shinn testified at the regular hearing that he had pain in his neck after the July accident, which he did not have previously. Shinn also reported that he informed his doctors of neck pain but did not receive treatment for that complaint. But the emergency records were inconsistent on this point. The Emergency Nursing Record form reflected that Shinn reported he had neck and shoulder pain. Shinn did not, however, identify pain in his neck on an emergency room pain diagram. And the Emergency Physician Record form did not reflect any complaint by Shinn of neck or shoulder pain; instead, this record indicated that Shinn's neck was nontender and he had a painless range of motion.

William C. Simon, D.O., treated Shinn after the July incident. On July 25, Shinn saw Dr. Simon for the first time and complained of left shoulder pain after a 16-foot fall. According to the doctor's notes, however, Shinn did not report a neck injury or complain about neck pain at that visit. Dr. Simon examined Shinn's neck because of the height from which he fell and because he noted that Shinn initially reported a neck injury to the emergency room. Dr. Simon observed that Shinn's neck was fairly normal, had a good range of motion, was not tender, and was supple, indicating no spasms. Dr. Simon also noted Shinn's neck muscles were normal and the cervical spine was unremarkable. After examining Shinn's left shoulder, wrist, hand, and elbow, Dr. Simon concluded Shinn had a rotator cuff injury and a left shoulder strain or sprain. Shinn saw Dr. Simon again on

2

August 8, still reporting left shoulder pain. Dr. Simon performed another physical examination and scheduled an MRI. Shinn returned on August 24, reporting left shoulder, wrist, and forearm pain. Based on the results from the MRI, Dr. Simon concluded Shinn had a rotator cuff tear and referred him to an orthopedic surgeon. Shinn went to physical therapy for his shoulder and his left arm was placed in a sling. He returned to work wearing the sling and was restricted to light duty.

The second accident occurred on September 19, 2012. Shinn was spraying ceiling texture in a house while walking backwards, when he tripped over a ladder and fell to the ground. The spray hose Shinn was using had a 4- to 5-foot metal part with gauges, hitting his left shoulder as he fell and causing his shoulder to strike the ladder. Shinn and the other workers finished working on the house that day. The next day, Shinn went to the doctor previously assigned to him by the workers compensation insurance carrier after the July accident. Shinn testified the pain in his neck worsened following the second injury. After the September accident, Shinn saw Dr. Donna St. Clair and reported his symptoms to her, including numbness and tingling in his neck.

Shinn stayed home for 2 days after the September accident. Tony's Drywall terminated Shinn before he was able to return to work the next week, stating that Shinn had left equipment outside, where it was damaged by rain. After terminating his employment, Tony's Drywall hired Shinn for cash on two isolated jobs repairing drywall. Shinn reported his brother had to help him complete the first job, which lasted 2 to 3 days. The second job was patching a wall crack and lasted 4 to 5 hours. Shinn asserted he could no longer work due to his injuries, so he retired. Shinn's family doctor prescribed him pain relievers and muscle relaxers, which he took on a daily basis. Shinn applied for and received Social Security disability payments.

In October 2012, Shinn's left shoulder injury was surgically repaired. Shinn participated in a course of postoperative therapy and used a sling and bolster after the surgery. He was released from physical therapy in March 2013.

At the request of Shinn's attorney, Dr. George G. Fluter, M.D., examined Shinn on October 29, 2013. As part of the examination, Dr. Fluter took Shinn's subjective report of his medical history. Shinn reported that he had no neck or shoulder injury prior to the July accident. He stated he fell off a scaffold in July, injuring his left shoulder; he did not mention injuring his neck. He also reported tripping over a ladder in September, resulting in increased left shoulder pain and neck pain. Dr. Fluter conducted an examination and observed that Shinn had left shoulder pain and impingement, left shoulder internal derangement, and left shoulder tendinitis and bursitis. Dr. Fluter also found that Shinn had a cervicothoracic strain or sprain and myofascial pain affecting the neck and upper back and left shoulder girdle. With regard to Shinn's neck, Dr. Fluter determined that Shinn's cervical range of motion was limited in his right lateral rotation and extension and there was pain at the end range in all planes.

Dr. Fluter also reviewed Shinn's medical records and imaging studies. He examined the left elbow, hand, wrist, and shoulder x-rays and cervical spine and bilateral acromioclavicular joint x-rays that were taken in the emergency room after the July accident and determined that there were no abnormalities, fractures, or dislocations present. He noted the cervical spine x-rays showed good overall alignment at the thoracic cervical region, body height and disc spaces were well maintained, axial joints were normal, and no malalignment, fractures, or subluxation. An examination of the MRI taken on August 13, 2012, a month after the July accident, showed a full thickness tear of the supraspinatus tendon in Shinn's left shoulder. Dr. Fluter also examined a cervical spine CT from September 27, 2012, which showed no acute abnormality after the September accident. A cervical spine MRI performed the same day showed similar

4

findings to the CT scan and showed minimal disk bulges. A left shoulder MRI showed a large full thickness rotator cuff tear.

In Dr. Fluter's opinion, the July accident was the precipitating injury to the left shoulder and the neck. As evidence to support his opinion, Dr. Fluter relied on the emergency room note after the July accident reflecting Shinn complained of neck pain and the x-ray of the neck taken at that time. In assessing Shinn's permanent impairment rating for the two accidents, Dr. Fluter concluded Shinn had a 25% left upper extremity functional impairment and a 5% whole person functional impairment based on minor impairment to the cervicothoracic spine, which was based on Shinn's subjective complaints. Dr. Fluter then converted the left upper extremity impairment to a whole person impairment equivalent and determined that Shinn suffered a whole body impairment of 19%.

With regard to work restrictions, Dr. Fluter determined that Shinn should: refrain from lifting, carrying, pushing, and pulling 35 pounds occasionally and 15 pounds frequently; avoid holding his head and neck in awkward or extreme positions; and perform certain activities only on an occasional basis such as overhead work, activities over and above the shoulder level using the left arm, and activities greater than 24 inches away from the body using the left arm. Finally, Dr. Fluter reviewed a list of 10 work tasks prepared by Dr. Robert Barnett, a clinical psychologist, rehabilitation counselor, and rehabilitation evaluator. Dr. Fluter determined that Shinn would not be able to perform 9 or 10 of those tasks within the listed restrictions for a total task loss of 90% to 100%.

At the request of Shinn's attorney, Dr. Barnett evaluated Shinn on January 2, 2014, to identify and assess Shinn's loss of ability to perform work tasks. He interviewed Shinn by telephone to establish his work history and job responsibilities. Dr. Barnett determined Shinn had performed 10 tasks during employment in the prior 5 years. Using Shinn's

subjective history, Dr. Fluter's report, and Shinn's physical restrictions, age, illiteracy, and current economic conditions, Dr. Barnett's concluded Shinn was likely to be unemployable.

The court ordered an independent medical evaluation by Peter V. Bieri, M.D., which was performed on September 16, 2014. Dr. Bieri performed a physical examination of Shinn, in which he noted Shinn continued to have pain in his left shoulder and intermittent numbness and tingling in his left upper extremity. He examined Shinn's cervicothoracic spine, which had no visible muscle spasm, but exhibited moderate tenderness and pain on the left side.

Based on his review of the August 13, 2012, MRI results, Dr. Bieri concluded that Shinn injured his left rotator cuff as a result of his July accident. Dr. Bieri further concluded that the September accident aggravated the left rotator cuff injury and caused cervicalgia with clinical radiculopathy. Dr. Bieri found Shinn had a 22% left upper extremity functional impairment and assigned a 5% whole person functional impairment for his cervical injury; in Dr. Bieri's opinion, Shinn's combined whole person impairment was 17%. Dr. Bieri assigned work restrictions of: lifting with both hands no more than 50 pounds occasionally, 20 pounds frequently, and 10 pounds constantly; unilateral lifting with the left upper extremity of no more than 15 pounds occasionally, 10 pounds frequently, and 5 pounds constantly; and no shoulder-level and overhead use of the left upper extremity. Applying the restrictions to the 10 job tasks identified by Dr. Barnett, Dr. Bieri testified Shinn had an 80% task loss.

For purposes of submitting the matter to the administrative law judge (ALJ) for decision, the parties' stipulated that Shinn's injuries occurred on July 16, 2012, and September 19, 2012, arose out of his employment with Tony's Drywall, and were covered by the Workers Compensation Act. The ALJ ultimately found that Shinn was involved in two separate accidents. As a result of the July accident, Shinn suffered an injury to his

6

left shoulder, resulting in a functional impairment rating of 22%. As a result of the September accident, the ALJ found Shinn suffered a whole body injury of 5% to the neck. With regard to the cause of Shinn's cervical spine impairment, the ALJ specifically found Dr. Bieri's opinion finding that the impairment was caused by the September accident more credible than Dr. Fluter's opinion finding that the impairment was caused by the July accident:

> "Dr. Fluter testified that the Claimant did not report to him that he had neck pain after the first accident. Dr. Fluter based his opinion that the neck impairment was the result of the first accident as the result of notes in the ER records, but those records are ambiguous regarding the Claimant's neck complaints. Dr. Simon, who treated the Claimant after the first accident, did not find any neck complaints or problems. Dr. Bieri performed his IME at the request of the Court, and his opinion is found to be more objective and credible."

Accordingly, the ALJ found Shinn was not entitled to a work disability because his whole body functional impairment for the cervical injury he sustained did not exceed 7 1/2 % under K.S.A. 2016 Supp. 44-510e(a)(2)(C)(i). The ALJ also found Shinn failed to meet his burden to prove he was permanently and totally disabled. Specifically, the ALJ held that the only opinion concluding Shinn likely was unemployable came from Dr. Barnett, and Dr. Barnett's conclusion was based solely on Dr. Fluter's report and restrictions without considering Dr. Bieri's conclusions regarding Shinn's work restrictions. Ultimately, the ALJ awarded Shinn $24,139.66 for both accidents, plus future medical benefits.

Shinn appealed the ALJ's award to the Board. The Board affirmed the ALJ in its March 31, 2016, order. With regard to the July accident, the Board held: "While claimant may have sustained a neck injury as the result of his July accident, there is insufficient evidence in the record proving he sustained a permanent functional impairment for his neck." The Board also upheld the ALJ's finding that Shinn was not permanently and totally disabled. Shinn now appeals the Board's order.

7

Shinn argues on appeal that the Board erred in making three findings. First, Shinn contends the Board erred in finding that the July accident resulted in permanent impairment to his shoulder only, claiming the evidence showed he also suffered a permanent impairment to his neck from that incident. Second, Shinn claims the Board erred in finding he was not entitled to a work disability under K.S.A. 2016 Supp. 44-510e(a)(2)(C)(i). Finally, he claims that the Board erred in finding he was not totally and permanently disabled under K.S.A. 2016 Supp. 44-510c(a)(2).

An appellate court reviews a challenge to the Board's factual findings in light of the record as a whole to determine whether the findings are supported by the appropriate standard of proof by substantial evidence. See K.S.A. 2016 Supp. 77-621(c)(7). This court may grant relief only if it determines that "'the agency action is based on a determination of fact, made or implied by the agency, that it is not supported by evidence that is substantial when viewed in light of the record as a whole.'" *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 514, 154 P.3d 494 (2007). This court reviews the evidence in a light most favorable to the prevailing party without reweighing the evidence or redetermining the credibility of witnesses. 283 Kan. at 514-15; see K.S.A. 2016 Supp. 77-621(d). "Substantial evidence" refers to evidence possessing something of a substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis of fact from which the issue raised could be reasonably resolved. *Casco*, 283 Kan. 508, Syl. ¶ 1.

This court may also review the Board's legal conclusions. See K.S.A. 2016 Supp. 77-621(c)(4); *Frazier v. Mid-West Painting, Inc.*, 268 Kan. 353, 358, 995 P.2d 855 (2000) (appellate court has jurisdiction to reverse Board's decision when Board reaches wrong legal conclusion based on erroneous application of law). This court exercises unlimited review of questions of law. 268 Kan. at 356.

*Functional impairment to neck*

In his first issue on appeal, Shinn contends the Board erred in holding Shinn incurred no functional impairment related to his neck as a result of the July accident. Shinn contends that substantial evidence establishes his neck injury after the July accident.

The Board relied on the following evidence to support its holding:

"At the emergency room after the July accident, claimant reported a neck injury and a cervical spine x-ray was taken, which showed no injury. Claimant saw Dr. Simon on three occasions in July and August 2012 and did not mention a neck injury. Nevertheless, Dr. Simon examined claimant's neck because of the height from which claimant fell and because he made neck complaints at the emergency room. While it is true Dr. Simon had no doubt claimant suffered a neck injury in the July accident, the doctor indicated claimant's neck was supple, his neck muscles were normal and his cervical spine was unremarkable. Also, Dr. Simon was the only physician who examined claimant shortly after his July accident.

"Dr. Bieri, who conducted a court-ordered IME, concluded claimant's September accident caused cervicalgia with clinical radiculopathy and resulting functional impairment. Dr. Bieri's opinion did not change after he was shown July 2012 emergency room records, wherein claimant complained of neck pain. The doctor also opined claimant's September accident aggravated his left shoulder injury.

"Claimant was evaluated by Dr. Fluter, who testified it would 'seem' claimant's July accident was the 'precipitating event' for his neck injury. Dr. Fluter based his opinion on claimant's emergency room neck complaints and the fact x-rays of claimant's neck were taken. Dr. Fluter's opinion is contradicted by the history he took from claimant. Claimant reported to Dr. Fluter of breaking his fall with his left hand and injuring his left shoulder in the July accident, but did not report a neck injury. Claimant reported to Dr. Fluter of having a neck injury as the result of his September accident. Moreover, Dr. Fluter ignored Dr. Simon's findings concerning claimant's neck."

9

Substantial evidence supports the Board's findings. The Board found Dr. Simon's examination of Shinn's neck after the July accident and his contemporaneous reports that Shinn did not complain of neck pain to be significant, especially in light of the fact that Dr. Simon was the only witness that treated Shinn shortly after the July accident and before the September accident. And both the ALJ and the Board viewed Dr. Bieri's court-ordered independent medical opinion to be more credible than Dr. Fluter's. This court may not reweigh these credibility determinations. *Casco*, 283 Kan. at 514-15. Although Dr. Fluter's opinion that the July accident was the precipitating cause of Shinn's neck injury relied on x-rays that were taken in the emergency room, Dr. Fluter himself reviewed those x-rays and determined that the results were normal. Viewed as a whole, the record supports the Board's conclusion.

Shinn merely points to evidence from which he contends this court could conclude that he suffered a neck injury as a result of the July accident, including his complaint of neck pain in the emergency room after the July accident, the fact that Dr. Simon examined his neck, Dr. Fluter's conclusion that his neck injury was likely caused by the July accident, and Dr. Bieri's testimony that he could not rule out any neck injury after the July accident. Most of Shinn's evidentiary points were directly addressed by the Board. The Board's findings must be upheld when supported by substantial evidence, even if other evidence in the record would have supported the opposite conclusion. *Graham v. Dokter Trucking Group*, 284 Kan. 547, Syl. ¶ 1, 161 P.3d 695 (2007); *Casco*, 283 Kan. at 515. The Board did not err in determining the July accident resulted in a 22% functional impairment to Shinn's left shoulder and no functional impairment for his neck injury.

*Work disability benefits*

In his second issue on appeal, Shinn contends the Board erred in failing to combine the injuries to his shoulder and his neck to compensate him for a whole body

10

disability under K.S.A. 2016 Supp. 44-510e. Had the Board combined the injuries, Shinn asserts his combined functional impairment from the two accidents would have exceeded the statutory requirement of 10% for an injury with a preexisting condition.

An analysis of the issue presented under K.S.A. 2016 Supp. 44-510e involves statutory interpretation over which we have unlimited review. See *Pruter v. Larned State Hospital*, 271 Kan. 865, 868, 26 P.3d 666 (2001). An appellate court gives no deference to the Board's interpretation of the law. See *May v. Cline*, 304 Kan. 671, 675, 372 P.3d 1242 (2016).

K.S.A. 2016 Supp. 44-510e(a)(2) provides in relevant part:

"(C) An employee may be eligible to receive permanent partial general disability compensation in excess of the percentage of functional impairment ('work disability') if:
(i) The percentage of functional impairment determined to be caused solely by the injury exceeds 7 1/2% to the body as a whole or the overall functional impairment is equal to or exceeds 10% to the body as a whole in cases where there is preexisting functional impairment.

Shinn contends that the plain language of the statute requires the court to combine the first and second injuries, which he asserts would result in a whole person impairment in excess of the requisite 10% statutory requirement. Shinn apparently considers the September accident the subject injury under the statute and the shoulder injury from the July accident to be a preexisting functional impairment. But this is not how the two accidents in this case were analyzed; rather than combining the injuries into one compensable event by preexisting condition or other rationale, the ALJ found that the accidents were separate and distinct events. Thus, Shinn received separate awards for the two functional impairments. The award for the two injuries was upheld by the Board.

11

Applying K.S.A. 2016 Supp. 44-510e to Shinn's two accidents as he requests would allow Shinn double recovery. The Board awarded Shinn a recovery for the functional impairment to his left shoulder incurred after the July accident. Under the Workers Compensation Act, where he has been compensated for a scheduled shoulder injury, Shinn may not also apply that injury as a "preexisting functional impairment" to enhance Shinn's whole body functional impairment recovery for his September accident. K.S.A. 2016 Supp. 44-510d(c) states:

> "Whenever the employee is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in K.S.A. 44-510h and 44-510i, and amendments thereto, and no additional compensation shall be allowable or payable for any temporary or permanent, partial or total disability."

In its order, the Board noted that at oral argument, Shinn (1) stipulated he could only receive a work disability as a result of either his July accident or September accident, but not from an accumulation or combination of both injuries and (2) "conceded that if the Board affirmed the ALJ's findings concerning functional impairment, he is not entitled to a work disability." Because the transcript of the oral argument is not in the record, this court cannot review the alleged stipulation or concession. We note, however, that the stipulation and concession allegedly made by Shinn is consistent with the law governing this case.

Under the Worker's Compensation Act, compensation is calculated differently depending on the nature of the disability. K.S.A. 2016 Supp. 44-510d and K.S.A. 2016 Supp. 44-510e provide compensation for partial disabilities. K.S.A. 2016 Supp. 44-510d calculates the award based on a schedule of disabilities. If an injury is on the schedule, the compensation identified in the schedule can be determined for the complete loss of the member or the partial loss of the member. K.S.A. 2016 Supp. 44-510d(a)(21); see *Casco*, 283 Kan. 508, Syl. ¶ 7. If an injury is not on the schedule, compensation is

12

calculated under 44-510e. The Kansas Supreme Court has stated that scheduled injuries under 44-510d are the general rule, and unscheduled injuries under 44-510e are the exception. *Casco*, 283 Kan. 508, Syl. ¶ 7; *Pruter*, 271 Kan. 865, Syl. ¶ 2. If a claimant sustains only scheduled injuries, he or she cannot receive compensation for a permanent partial general disability under 44-510e. The Board affirmed compensation to Shinn for two separate injuries to his shoulder and his neck resulting from two separate accidents according to 44-510d and 44-510e. There is no authority to also combine those injuries as Shinn suggests.

Alternatively, it appears that Shinn is suggesting he may be entitled to have his functional impairments combined under the theory that they resulted from a single injury. If a single injury causes both scheduled and unscheduled injuries, compensation may be awarded under K.S.A. 2016 Supp. 44-510e. *Bryant v. Excel Corp.*, 239 Kan. 688, 689, 722 P.2d 579 (1986). But Shinn does not contest that the July and September accidents were distinct events, and he did not argue, nor did the Board find, that the September injury was a natural or probable result of the July injury. See, *e.g.*, *Jackson v. Stevens Well Service*, 208 Kan. 637, 642-44, 493 P.2d 264 (1972) (court included secondary shoulder disability in determining claimant's award for primary injury to his hands, concluding that claimant had suffered a general body disability rather than a scheduled injury). Even if Shinn had properly argued the secondary injury rule, it does not apply here. See *Stockman v. Goodyear Tire & Rubber Co.*, 211 Kan. 260, 263, 505 P.2d 697 (1973) (*Jackson* rule is limited to the results of one accidental injury, not to a new and separate accidental injury.).

For these reasons, we find the Board did not err in compensating Shinn for his separate injuries rather than combining the injuries pursuant to K.S.A. 2016 Supp. 44-510e.

*Permanent total disability benefits*

In his final issue on appeal, Shinn argues the Board erred in holding that Shinn was not permanently totally disabled under K.S.A. 2016 Supp. 44-510c(a)(2). That statute provides:

> "Permanent total disability exists when the employee, on account of the injury, has been rendered completely and permanently incapable of engaging in any type of substantial and gainful employment. Expert evidence shall be required to prove permanent total disability."

This court can look to the claimant's age, intelligence, education, training, previous work history, and physical limitations to determine whether he or she was permanently disabled. *Wardlow v. ANR Freight Systems*, 19 Kan. App. 2d 110, 114, 872 P.2d 299 (1993). The question of whether a claimant is permanently and totally disabled is a question of fact based on the totality of the evidence. 19 Kan. App. 2d at 113. This court has unlimited review of questions of statutory interpretation and gives no deference to the Board's interpretation. *May*, 304 Kan. 671, Syl. ¶ 2.

This case presents an unusual circumstance where the claimant suffered two separate and distinct accidents, but the evidence in support of total disability was based on a combination of the injuries. The Board analyzed the total permanent disability inquiry as relating only to a single accident. But the Board acknowledged this unusual circumstance and clarified that its ruling pertained only to the September accident based on Shinn's agreement:

> "Claimant asserts that even if his September accident caused only a whole person functional impairment for his neck injury, he is permanently and totally disabled as a result of said injury. As noted above, claimant concedes he must prove the injuries from his September accident caused him to become permanently and totally disabled."

14

The Board is apparently referencing a stipulation made at oral argument before the Board, a transcript of which was not included in the appellate record. This court therefore has no way to assess whether Shinn, in fact, conceded he would have to prove a permanent total disability based solely on the September accident. But again, such a concession is consistent with the law governing this case.

An analysis of the Workers Compensation Act confirms that permanent total disability awards are intended to be based on a single injury. When construing statutes, this court is required to give effect to the legislative effect if that intent can be ascertained. When a statute is plain and unambiguous, this court must give effect to the legislature's intention as expressed, rather than determine what the law should or should not be. *Foos v. Terminix*, 277 Kan. 687, 695, 89 P.3d 546 (2004).

K.S.A. 2016 Supp. 44-510c(a)(2) requires that the employee be rendered permanently incapable of engaging in any substantial and gainful employment "on account of the injury." An "injury" under the Worker's Compensation Act may occur only by accident, repetitive trauma, or occupational disease. K.S.A. 2016 Supp. 44-508(f)(1). There is no dispute here that Shinn's injuries were by accident. K.S.A. 2016 Supp. 44-508(d) defines "accident" as:

> "[A]n undesigned, sudden and unexpected traumatic event, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. An accident shall be *identifiable by time and place of occurrence*, produce at the time symptoms of an injury, and *occur during a single work shift*. The accident must be the prevailing factor in causing the injury." (Emphasis added.)

"The language in K.S.A. [2016 Supp.] 44-510c(a)(2) requires that the disability result from a single injury." *Casco*, 283 Kan. at 528. The Board did not err in determining that the permanent total disability inquiry relates to a single injury.

15

Restricting its opinion to the September accident, the Board concluded that it was unable to find Shinn suffered a permanent total disability because none of the medical opinions separated the task loss or work restrictions between the shoulder injury resulting from the July accident and the neck injury resulting from the September accident:

"Dr. Fluter and Dr. Bieri's work restrictions were for claimant's neck injury and left shoulder injury. Their task loss opinions were based upon the work restrictions they imposed for both claimant's neck and shoulder injuries. Neither Dr. Fluter nor Dr. Bieri indicated what claimant's task loss was for only his neck injury. Dr. Bieri stated he could not make such a determination. Dr. Barnett's opinion that claimant was incapable of earning a wage in the open labor market was based upon Dr. Fluter's work restrictions for claimant's neck **and** left shoulder injuries. Dr. Barnett did not, and could not, give an opinion as to whether the work restrictions for claimant's neck injury rendered him incapable of engaging in any type of substantial and gainful employment.

"Dr. Fluter's assessments of claimant included neck/upper back/left shoulder girdle pain, cervicothoracic strain/sprain and myofascial pain affecting the neck/upper back/left shoulder girdle. Dr. Bieri's diagnosis was cervicalgia with clinical radiculopathy. Both doctors gave claimant only a 5 percent whole person functional impairment for his neck injury. Although claimant's neck was evaluated, he received no treatment for his neck injury following his July and September accidents; he only underwent diagnostic studies. Simply put, claimant's neck injury was not so severe as to render him permanently and totally disabled."

Substantial evidence supports the Board's factual finding that the experts did not separate their opinions between the two accidents. Drs. Fluter and Bieri both offered opinions as to Shinn's task loss, but neither separated their task loss opinions between the July and September accidents. Dr. Barnett was the only expert to testify that Shinn was unemployable, and he relied only on Dr. Fluter's report to make his conclusions. For the reasons stated above, we find no error in the Board's decision.

Affirmed.